Good morning, Your Honors. May it please the Court, my name is Ina Lipkin, and I'm representing the Petitioner, Nirmal Singh, in a case denied by the Board of Appeals for what Petitioner contends are erroneous grounds. In this matter – Could you go on speaking just a bit louder and into the microphone? Certainly. The idea was to communicate to the panel, and so you've got to focus on that. Yes, Your Honor. In this matter, the Petitioner was persecuted for twofold reasons. On the first hand, he was a member of a political group that the police disapproved of, and secondly, the police attempted to squelch his complaints against them. The IJ, the immigration judge in this matter, had erroneously disregarded a number of corroborating items of evidence to substantiate the Petitioner's claim. Namely, this was a medical report by a psychologist and also the affidavit of a witness. However, the IJ had failed to consider the cumulative totality of all the evidence that the Petitioner had submitted. The IJ had also focused on minor and trivial inconsistencies that really didn't bear on the heart of the claim. None of the items of inconsistent testimony that the IJ had pointed to were really made to enhance the claim or otherwise took away from the veracity of his statements. But, Counsel, the questions about the manner or time of his father's death, the number of times that he was arrested by the police, the dates that he's in or out of the country do seem to go to his overall credibility. If we're to believe that this witness's father was persecuted by the police for his political beliefs, then it may become critical as to whether Mr. Singh testifies on one occasion that his father was killed in one way and then says another time that he was killed in a very, very different way. Why isn't that relevant? Because I think that if you look at the details of the evidence submitted, namely that article regarding his father's death and his testimony, if viewed together, you see that it wasn't really inconsistent. On the one hand, the Petitioner testifies my father was taken to a field or from the field was killed. On the other hand, the news article states that individuals had taken his father from his bed and had not even allowed him to grab his slippers. Well, it doesn't say that he was killed in his bed. So presumably, he was taken somewhere to be killed. Therefore, there is an ambiguity there which I think should be resolved in the favor of the Petitioner. There is a possibility he was taken out somewhere, such as the field, and killed there. So I think there is enough ambiguity there that the I.J. should have given the Petitioner the benefit of the doubt. The benefit of the doubt doesn't really work before the I.J. because Mr. Singh has the burden here. That's true, Your Honor. But he had corroborated his statements with documentary evidence. That newspaper article proved that his father had been killed. The article states by militants. The Petitioner stated it was undercover police. Really, nothing in the article refutes that it could have been undercover police. So I think that this article only lends itself to prove... Right, but it may make a difference if on the one hand he says my father was killed by militants and then we've got another report that says he was killed by police. At some point, what's going on here? If he's been killed by militants, then Mr. Singh may not be being persecuted in the same way that he claims he's being persecuted. Again, in this case, the Petitioner had testified to various problems. One of them was that the police later on had targeted him for complaining against them for all the problems his family had suffered, including problems his father had, problems his brother had, and his own persecution. So even if he was confused, let's say, about who it was that had targeted his father, later on he did come into the sights of the police who then tried to stop him from complaining against them. So even if a portion of his testimony is deemed inconsistent, the remainder is consistent and does support his claim of persecution. Some of the other inconsistencies with dates are minor. For example, he said that his... He testified that his father was killed in 1979, even though his declaration says 89. That is clearly a slip of the tongue. It might be a ten-year difference, but the fact that it's 79 versus 89 shows that the respondent was merely confused and his testimony that the medications he takes for his diabetes and some other health issues he had could very well have caused him to make this sort of minor mistake, which he didn't. Counsel, two questions here. First of all, with respect to the 79-89, I admit, the 79-89, it looks like it's just supposed to be 89. I don't think that the government actually contends anything else. But what was odd was that the I.J. said, I think you're mistaken. I think you mean 1989. And Mr. Singh said, oh, no, it's 1979, which everybody knew couldn't possibly have been correct. Yet when he's invited to correct the record, he doesn't do it. Well, Your Honor, if you look at other portions of the record, it's clear that perhaps his lack of a higher form of education and the problems that he had could have contributed to his... Form of education doesn't really, wouldn't really explain a 1979 versus 1989 mistake. But he does say, quote, I counted four years, unquote, at the record on page 63. He counted that it was four years after this incident had occurred. So the way that he remembers things might be just a little bit different than we expect him to. But clearly it wasn't because he was trying to mislead the court. Counsel, I won't speak for my colleagues. I'd like to hear about the medical evidence of his mental disabilities. In regards to... Well, we do have, he does seem to have some problems remembering things. He says he has problems remembering things. The 1979 versus 1989 problem is a pretty obvious example of that. Your client has been given numerous opportunities to provide medical evidence. Medical evidence he comes up with is pretty weak, to say the least. He comes up with a gastroenterologist who issues a very, very ambiguous statement. What are we supposed to do with this? This doesn't seem to be helping. I understand, Your Honor. However, the petitioner did submit the psychological report of Dr. The petitioner needs a lot more extensive medical evaluation. That it's not a cut and dry way of trying to decipher what's wrong with him. But he needs a more involved and in-depth evaluation. So I think the fact that he took steps and obtained that document and her testimony shows that he did make an effort to support his claim. But her testimony is also quite equivocal. She doesn't say he's got mental impairments or that he's got things affecting his memory. She suggests that additional testing would be useful. Her statement is clearly far more extensive than anything else that's been submitted. But the evidence from the Del Norte Clinic and Dr. Bondari don't seem to be relevant at all. Well, I think those two items show that he is taking medication. And Dr. Taylor stated that those medications could affect his memory. So I think that he did show how those two items of evidence did support his claim that he had some memory impairment. Because the medication he took for diabetes and his knee injury. Do you want to save some time for rebuttal? Yes, thank you. Okay. Good morning. May I please support? My name is Britannia Hobbs. I'm an assistant U.S. attorney from Portland, Oregon. This is one of the farm-out cases. Yes, I'm actually Thanks for traveling down from Portland for this. Thank you. I've been a trial attorney for 16 years and this is my first Ninth Circuit argument. This case is governed by the substantial evidence. Let me start on a different tack here, hypothetically. I found this a bit difficult, a bit of a difficult case analytically for this reason. You have a petitioner and let's assume that substantial evidence did support evidence of mental disability for one reason or another. And I know you aren't conceding that point, but just help me with the analysis. Can an I.J. or is an I.J. allowed to find lack of credibility based on lapses of memory and inconsistencies when the petitioner comes in and says, look, I can't remember a lot of things. I have a head injury. Presuming that the head injury, there's some medical support for the head injury. It seems to me a little bit inconsistent for an I.J. to make an adverse credibility finding on inconsistencies on a person who is known to have some difficulty in remembering. It seems to me an I.J. could, for example, say the petitioner didn't meet his burden of proof, but in this case the I.J. made an adverse credibility finding. So if we presume that he has a head injury and can't remember, is that a proper finding? Well, in this case the I.J. notes that the petitioner has the burden of proving that he's incompetent. And he doesn't expressly say I find he failed on that burden of proof, but I think it is implied in the decision. I'm sorry, I'm not hearing you. Sorry. Speak right in into the microphone. Yes, sir. I think it is clear that the I.J. considers all of the testimony on competency. And the regulations, 8 CFR 1240.4, states that a mentally incompetent alien may be represented at a removal hearing by his attorney, legal representative, legal guardian, near relative or friend. But this really isn't a case of total incompetency. He's testifying. It's more of a case where he says I'm impaired and I can't remember dates. I can't remember the details of my testimony. So my question is actually a little narrower than that. My question is if we assume for the sake of argument that that's a valid position, that the petitioner actually is mentally impaired because of a head injury and can't remember dates, but is not incompetent, is it appropriate for the I.J. to make a finding of adverse credibility based on inconsistencies in his testimony? Well, the I.J. follows a two-step process. He basically decides that he can't determine anything from the petitioner's testimony, and therefore he looks for corroborating evidence. Corroborating evidence is produced consisting of one witness who the I.J. specifically finds is not credible. Does that answer your question? Well, in part, but I don't think that's exactly what the I.J. did in this case. The I.J. made an adverse credibility finding, and under our law that has some significance because if we disagree with that, then the remedy is to send it back, presume what the petitioner says is true, and then determine whether or not the petitioner has met his burden of proof on that record. But the adverse credibility, you're throwing out his testimony completely. So to me it struck, and it may be a separate question, whether or not the petitioner has actually proven a disability, but in that kind of case, assuming that a head injury or disability were proven, then it seems to me that the I.J. really can't make an adverse credibility finding based on lack of memory. Because basically you're saying that no disabled person can get relief under the I.N.S., and that can't be the law. Under the I.N.A., I should say. Sorry. Well, I think that it's implied that the I.J. found that the petitioner had not met his burden of proving his incompetency. Because even the witness he finally provided, the psychologist, testified that he was able to assist his attorney. In fact, she was directly asked is he competent on page 286 of the record. I don't understand why competence is a factor here, in the sense, if the petitioner is incompetent, then he's entitled to a legal representative, and that's a different standard. The question is, can you make an adverse credibility finding based on memory lapses of someone who can assist, who is not incompetent, but in fact, though, is mentally impaired and prone to these kind of errors? Well, I don't think that's this case. I think this case is a finding that he was competent, because he failed to improve his incompetence on numerous occasions. And really, the I.J. bent over backwards, giving him an opportunity to prove that he was incompetent, and he never was able to prove that. In fact, the psychologist who finally testified said he could testify. It seems to me that that's sort of a straw man theory, though. I just don't see it as a case where you can have somebody who is able to assist, but may have some mental impairments and mix up dates. And if you know that going in, you can't hold the mixing up of the dates as evidence that they're lying, which is basically what you're saying in an adverse credibility finding. Well, he did go and try to find other corroborating evidence beyond just the petitioner's testimony, because the I.J. was having that problem of deciding what to do with the petitioner's testimony. As the I.J. said, it was a difficult case because of the difficulty of the petitioner in testifying. Yes. So what are the inconsistencies that you think go to the heart of the claim? Well, definitely the testimony about the way in which the father was killed, allegedly. The newspaper article says, Singh was sleeping in his bed, was taken with them by the militants. The militants didn't even allow Mohinder Singh to wear his slippers. That's on page 455. Whereas on page 126, it says, this is a questioning to the petitioner, it says, and do you know how your father was killed, sir? Answer, yeah, he was working at the well and they picked him up from there. Question, who picked him up? Answer, there were five persons who had covered their faces with some kind of scarf or bandana and they took my father to a distance, quite a bit away from there, five or ten of them, and they shot him in the back. And also, it's a 20-page I.J. decision and the I.J. outlines all the things mentioned in the application. And the I.J. is troubled by the application because it's typed in English and the I.J. doesn't know how it was prepared. But when then the I.J. goes through all the testimony in great detail, and one of the things that the petitioner completely omits in his testimony is an explanation of the police coming to his house looking for his brother and arresting the petitioner because he didn't know the whereabouts of his brother. At the hearing, the petitioner never testifies to anything about that in particular. So that would be my problem with the I.J. It's the I.J.'s credibility. I've seen enough of these cases in recent time to come to the conclusion that the I.J.'s are told to find the asylum seeker incredible. And then I see a record like this where the I.J. searches out every possible discrepancy. It's not a normal way to evaluate testimony. If somebody says he did something in 84 and then he's back in 79, that's an obvious little blunder. But this I.J. grabs it, runs with it, because he's been told, find him inconsistent, search the record. And so the I.J. comes up, it's not your fault, but the I.J. is a very unpersuasive judge. If you assume he's on the alert only to find the witness incredible. And that's the situation we're getting now in these cases. I don't know how many of you do. How many of you do? This is actually the first asylum case I've ever done. The pattern is overwhelming. Well, I don't know anything about this I.J. Robert Yergin. I don't either. I'm just going to tell you what the I.J. pattern is today. It appeared from the record that he tried overwhelmingly to let the petitioner find a medical doctor or someone to support his incompetency claim. In fact, right from the beginning, they tried to let him do that. I see I'm almost out of time, so I believe I'll just finish with saying that substantial evidence isn't the standard in this case. And unless the court finds that the evidence compels another result, it must be affirmed. Thank you very much for your argument. Your Honors, I just want to point out that here the I.J. kept repeating that the evidence that the petitioner submitted was hearsay. However, the next argument stated that hearsay is admissible if probative and its submission is fundamentally fair. In this case, the petitioner did submit the psychological report from Dr. Taylor, and I think it would be unfair to completely discredit it as he had done in this case. I think the question perhaps, and the converse concern I have for your side, is what do you have in the record that supports the disability? I mean, the psychological report is pretty thin. The other medical reports don't really go to it. They talk about anxiety and some depressive disorders. There doesn't seem to be any medical support for his allegation of head injury. What's your best case on the record that you have a proven impairment? Your Honor, I'll be honest. There's nothing here that's conclusively in petitioner's favor to show he is disabled. However, if you take away and don't even look at the medical evidence that he submitted, and you just look at his testimony, it's clear that the mistakes he made did not go to the heart of the claim. There was nothing here that the IJ could really show were inconsistencies that went to the heart of the claim. As far as the first incident, the first arrest with his brother, he wasn't asked. He responded to all the questions he was asked, and when he did so, the details of those incidents conformed and mirrored what were in his declaration, but for some of the dates that he did confuse. He only testified as to two arrests, I believe, when he was before the IJ. But his application has evidence of three arrests. Right, but in the setting of the courtroom before the immigration judge, the petitioner doesn't, you know, he only responds to the questions he was asked, so if he wasn't directly asked about that by his counsel. Were you trial counsel for him? No, I wasn't. Did his counsel not ask him about one of the three arrests? I don't believe that in the beginning he asked in a distinctly chronological order. I don't think there was a question, well, weren't you arrested, you know, what was... I'm sorry, remind me, which arrests did he not testify about? We have the 1993, 1999, and 2000. I believe it was the first one, the 93. But in fact, I'm not sure where it was in the declaration. In the administrative record, he does say that the police took him... Just a moment, I'm just looking for it. His application is on page 472, and it's about three-quarters of the way down where he has the 1993. He says that the police took him for three days, two nights. He was beaten with a wooden rod and a leather strap. Right. Okay, I think it was on cross-exam that he did not testify to the first arrest, but on direct he did when his attorney asked him. I couldn't point out right now where on cross, whether he was asked and he failed to answer or whether he was just not asked about it. Thank you, counsel. Thank you both for your arguments in this case, which will be submitted.
judges: Noonan, Thomas, Bybee